The undersigned having reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ford. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission.
2. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the Commission has jurisdiction over the parties and the subject matter.
3. It is stipulated that all parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
4. The employer-employee relationship existed between plaintiff and defendant on February 5, 2000. Defendant-employer was a duly-qualified, self-insured employer at the time of the incident and the servicing agent for the employer was Key Risk Management Services.
5. That plaintiff's average weekly wage on the date of the alleged injury was $826.10 which yields a compensation rate of $551.01.
6. It was further stipulated that plaintiff was out of work from February 7, 2000, until May 5, 2000, when she returned to work with defendant-employer at the same or greater average weekly wage as she had prior to the injury.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff is a 39 year old woman who was working for defendant-employer on February 5, 2000, as a registered nurse on the 5th floor of defendant-employer hospital. Plaintiff's regular shift ran from 7:00 p.m. through 7:00 a.m. on Friday, Saturday, and Sunday. Her job duties included total care of six patients which duties included but were not limited to providing medications, dressing wounds, administering intravenous fluids, maintaining catheters, breathing tubes, feeding tubes, nasogastric tubes, and compression hose.
2. Arising from these duties, a registered nurse such as plaintiff, would occasionally have to bend or squat in the normal course of duties while providing care to the patients. The number of times a nurse had to bend or squat depended upon the amount of care the patient required. It was not unusual for a nurse to bend or squat to empty a Foley bag, measure chest tube drainage, retrieve items dropped on the floor, or straighten air lines attached to compression hose being worn by the patients. It was also not unusual or out of the ordinary for a nurse to adjust or re-tie restraints.
3. Patients on the 5th floor where plaintiff worked were often alcohol/drug abusers, surgical patients, and patients with HIV or tuberculosis. It was not unusual for patients on this floor to be restrained. Further plaintiff testified that on occasion she would encounter patients whose restraints had been tied incorrectly.
4. On February 5, 2000, plaintiff was assigned to care for a patient with dementia. When the patient arrived on plaintiff's floor, the patient was restrained and his restraints included a Posey vest which limited the motion of the patient's torso. While caring for the patient, plaintiff had the occasion to raise the patient's bed. While raising the bed, the Posey vest on the patient began to tighten across the patient's chest. Plaintiff started to squat in order to investigate how the restraint had been tied under the bed. While squatting, she heard a pop and felt a pain in her right knee. Plaintiff sat down on the floor and subsequently reported the incident to her employer.
5. Plaintiff came under the care of Dr. Henry Adomonis of Concentra Medical Center and was later referred to Dr. Robert Esposito who performed an arthroscopy and partial lateral menesctomy on February 29, 2000. On May 5, 2000, plaintiff returned to work with defendant-employer at her regular job making the same or greater average weekly wage as she had prior to the injury.
6. Bending and/or squatting were not unusual in plaintiff's job. Bending and/or squatting in connection with the care of a patient were a normal part of plaintiff's job. Plaintiff has alleged that the fact that the Posey vest was tied incorrectly and required her to squat to investigate was an unusual occurrence out of the normal course of his duties, and therefore a compensable injury.
7. In that bending and/or squatting was within the normal course of duties for plaintiff, the reason that plaintiff squatted on February 5, 2000, was irrelevant and does not enter into the determination of whether or not plaintiff was engaged in her normal duties. It was normal for this plaintiff to bend or squat as part of her customary duties. Further, it was normal for the degree of care needed by plaintiff's patients to vary and was not unusual for the patients' restraints to be tied incorrectly.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. To obtain compensation under the North Carolina Workers' Compensation Act, a plaintiff must prove that he sustained an injury by accident arising out of and in the course of his employment. N.C. Gen. Stat. § 97-2(6). If a plaintiff is injured while carrying on his usual tasks in the usual way, the injury does not arise by accident, and is therefore not compensable. However, if an interruption of the work routine occurs introducing unusual conditions likely to result in unexpected consequences, an accident will be inferred. Gunter v. DaycoCorp., 317 N.C. 670, 346 S.E.2d ___ (1986).
2. Plaintiff injured her right knee while carrying on the usual and customary duties of a registered nurse in the usual and normal way. The evidence does not show an injury by accident, but merely shows an injury during the course and scope of employment.
3. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment on February 5, 2000. On February 5, 2000, plaintiff did not sustain an injury from an interruption of her normal work routine by the introduction of unusual conditions likely to result in unexpected consequences while working for defendant-employer. N.C. Gen. Stat. § 97-2(6).
4. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby DENIED.
2. Each side shall bear its own costs.
This the 9th day of July 2001.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER